for a monthly fee of $15 per side, $80 per purchase side for the account. Counsel, you may approach the podium and present your argument. Thank you, Your Honor. I would like to reserve three minutes for rebuttal, please. All right. Please, the Court. John Ketcherside, I'm here on behalf of Mr. Frank Seeley, who, back in 2008, filed an application for Title II Social Security disability benefits. There's always the issue of whether a person is disabled or not, but also in a Title II case there's the additional issue of does that person have insured status, which is calculated based on the number of quarters a person works as a percentage of the quarters that they haven't worked before their claim for disability. Mr. Seeley, at the time he made his claim, he alleged disability beginning June 2, 2001, which was quite a while back. It's a little unusual to have one that far back. He also didn't have a lot of medical records. I think it's important to note in the case in the disability report appeal, which is one of the things that's taken initially with the field office report, this isn't one of those cases where he changed his alleged onset date later when he found out when his date last insured ran. This was the initial date that he used, and he used this. He testified in his hearing before the administrative law judge that this was the date that he just couldn't work anymore. He kept trying to work part-time, and the work record, his work history, bears this out. He hadn't worked for a number of years full-time. He continued to try and work, and we discussed at the hearing, he was still continuing to try to work up until probably 2005 or so, although he would work short periods. He did the census for a little while. He tried to sell cell phones for a little while. He even tried to start a business in the remote past. He had a business, had a contract with some stores to do janitorial work. But in any event, on November 2008, he filed a claim. It was denied initially and on reconsideration. In June of 2009, so it took him about seven months to go through that DDS, Disability Determination Services process, he submitted his hearing request. About two years later, and we think this is important too because the judge talks about how late the reports were, but there was almost three years there just going through the administrative process. He gets a hearing, and at the hearing, the administrative law judge and I questioned him. And there really was no limitation on questioning. I think it was appropriate. The judge did ask about things before and also after the date last insured. But when the judge made his decision, which he made shortly after, the judge made his decision based on what I think is just mechanically saying that there were no indications, there was no symptoms. We don't know if there were symptoms. But there were no statements regarding his diabetes. I think there was something in there about some arthritis, some hypertension. But the main things that he alleges later were disabling was diabetes and his chronic depression. Now, I think we can look at the case two ways. First, there is a Social Security ruling for cases just like this. In this, the judge correctly found that it had been quite some time since Frank made his application. He testified in the hearing that the reason for this was he just kept trying to work. He thought, maybe I'll get better with more treatment, and I can go back to work. But also the judge correctly found there wasn't a lot of medical treatment. In December, I think, of 2000, and that's page ID number 329, he first went to Northside Medical Clinic in Jackson, Tennessee, where Frank lives. Let me ask you this. Isn't the problem here that you don't have evidence of disability or treatment of your client from before his date last insured, and that's what's preventing you or your client from being able to make out his claim? Isn't that it in a nutshell? That's the issue, and the judge and I, who know each other pretty well, I mean, when we opened the hearing, that's the first thing we talked about, is that was the issue, and I got involved in the case later and told Mr. Seeley, you've got a couple of issues here. One of them is it took you so long to do your claim, and the other one is you weren't very smart about not getting treatment. But the Social Security ruling, 8320, is specifically for that situation. This is in cases where there's not a lot of medical evidence like this and like some of the cases, Blankenship, Gamble, Garner, Garland, some of the cases that this court's decided. You concede that you don't have evidence before the date last insured? Your Honor, I'll concede that there isn't a record of showing that, but cases from this court have said even if the evidence is from a little bit after, and we have evidence from five days after the date last insured of chronic conditions, even if it's a little bit after, you can't just ignore that evidence. You have to look at it from the standpoint of what it says about what happened before date last insured. And we know that by five days after the date last insured, and that's page ID 329, when he went back to Northside Medical Clinic, at that time he was complaining. He looked disheveled. The doctor said he was complaining of polydipsia, polyuria, which is the frequent need to drink, frequent thirst, frequent urination, and weight loss. And there was some, a little bit later, some records showed he had a 45-pound weight loss. And these are all things that indicate diabetes, which is a chronic condition. It's not a traumatic onset condition. Those cases are easy. If you have a car wreck five days after your date last insured runs, you're out of luck. But if you have diabetes that has affected you so much that by five days, I mean, he's not sitting there, no, what my date last insured was, well, I'll just wait five days and just, you know, roll the dice and see how I do in this case. He went when he really thought he needed it. And this is a person that did not have a good, he didn't do a very good job of keeping up with his medical treatment. That's obvious. But this court in Blankenship found that that's often the case. Sometimes people don't do the right things. He also complained at that time of chronic depression, not something that happened that day. I feel depressed today, so I'm going to go to the doctor. He complained of chronic depression, and that's just the kind of impairment that was in the Blankenship case where this court said people aren't always going to go, especially mentally ill people. They don't necessarily go when they should for mental health treatment. You can't hold that against them. But here, the mechanical application, he didn't complain about it until five days after his date last insured ran. That's not a bar. It's not a bar at all. What it means is that's when you pull out Social Security ruling 8320. And the Social Security ruling is very, very specific to this situation. I mean, it talks about it's very important to the establishment of a period of disability and the payment of benefits, insured status is. But it's not itself a consideration in determining when disability begins. So everybody, I think, the administrative law judge, who I don't think was trying to do anything wrong at all, we certainly had a good hearing, and I've always had a lot of respect for him, as well as the district court judge. I think they just missed the application of this rule, or Social Security ruling, which is binding on everybody. Onset in disabilities of non-traumatic origin. You look at his allegations. He said by that time in the hearing, Mr. Steeley said, by June of 2001, I just wasn't able to work full-time anymore. And we don't have any full-time work after that. The administrative law judge actually agrees, and in his decision, a couple of things that are important in the decision. I think page ID number, let's see, 57. The judge found that he had not performed substantial gainful activity after his alleged onset date, much less his date last insured. So he hadn't worked. So you're looking at his statements, I couldn't work anymore after this. And then you're looking at the work history. He didn't work anymore after that. You're looking at medical evidence, which is going to be imperfect. And SSR 8320 recognizes that, and Blankenship recognizes. Sometimes people don't do the best thing for themselves, especially with mental impairments. So what do you do? First off, I think at one level, it would be appropriate for this court to remand just for the administrative law judge to follow SSR 8320. And decisions from this court have said specifically, when this is the case, you need to get a medical expert or a medical consultant at the hearing. DDS, which is the administrative level of approval or allowance or denial, did not obtain anything from a medical expert, which they could have had a psychologist or an endocrinologist testify about what were his symptoms at that time. Is it reasonable to think that he could have been unable to work full time by that time? They didn't do that. And they didn't have all of the evidence. And this court has found several times that when the agency reviewers, agency medical and psychological consultants are due deference, when they don't have the whole record and their opinions are different from, which I'll get into in just a second, their opinions are different from the treating doctor. They're not supposed to be given away. Here they didn't have the record, and I see them getting pretty close. And to sum things up, I did what SSR 8320 required. I got a report dating back all through the relevant period from Dr. Larson, and Dr. Larson had been treating Frank for about eight years. I want to wrap up. I see your light is on there. He had seen him for eight years at that time. He didn't see him from onset, but he saw him from shortly after, from a couple of years after. And we also had a forensic examiner examine Frank and the record. Both of them said that by his alleged onset date he was unable to work. Thank you. Thank you. Thank you. You may proceed, counsel. Thank you, Your Honor. It pleases the court. My name is Chris Yarbrough. I'm representing the commissioner in this case. I guess I will start with what appeared to be the thrust of the claimant's argument in this case, which is the applicability of Social Security Ruling 8320. I believe that the fatal flaw in the claimant's argument is that this court's binding precedent states clearly that SSR 8320 applies only when there is a finding of disability, and then it is necessary to determine when the disability began. In this case, there was no finding of disability. He cited the Blankenship and a few other cases in his briefs, and he just discussed Blankenship, but those cases are distinguishable. Blankenship, in particular, had a finding of disability. The claimant in that case had filed for both disability insurance benefits and supplemental security income. Now, there was a date last insured as to the DIB in Blankenship, but SSI has no date last insured. It is an indigency program, and it runs as long as you are qualified by your income and resources. So the ALJ in Blankenship found that he was not disabled as of the DLI, but did find him disabled, the claimant disabled, as of a later date during the SSI period. Therefore, this court said because the evidence was unclear when the exact onset date was, the ALJ should have gotten a medical expert to determine or help determine when that onset was. This case is completely distinct. There is no SSI application. SSI is not at issue. The ALJ never found the claimant disabled at any relevant period of time. This case is bound by precedent and by law to the relevant time period, which is between his alleged onset of disability and his date last insured, which I found the record to be between June 2, 2000 and June 30, 2001. So I would say that SSR 8320 is simply inapplicable, and this court cannot remand on that basis. As to my general points about this case, as I noted, the relevant time period for consideration is between June 2, 2000 and June 30, 2001. The regulations provide for a five-step sequential evaluation of which you are all aware. And at step two in the relevant part to this case, the individual must prove that they have a severe impairment lasting 12 months or resulting in death. If they cannot show severe impairment, they are simply not disabled. The analysis ends at that point. Now the ALJ in this case found the claimant did have a medically determinable impairment of hypertension, but that he had no severe impairment or no impairment that rose to the level of being severe under the regulations as of his date last insured. And the reason for that is, as counsel noted, there was a very, very sparse documentation of any medical treatment during the relevant period. The claimant in the record provided two records, one of which was an x-ray of his left hand that dated prior to his date last insured, but actually also prior to his alleged onset date, which was in May 1995. And the other and more telling document in the record was a December 30, 2000 treatment note from Dr. Taylor. Now in that note, Dr. Taylor noted the plaintiff had a, quote, and that is a direct quote from Dr. Taylor. So in December 30, 2000, which is square in the middle of the relevant period of this case, the claimant had no problems. That was it. He had a history of hypertension and that was it. And the ALJ found a medically determinable impairment of hypertension, but he found that it was not severe. And the reason for that is Dr. Taylor's record showed no abnormal objective findings and did not give any opinion of limitations at that time either. So while there was that diagnosis of hypertension, this court has long held that finding of no severe impairments is supported where doctors' reports are silent on limitations. A mere diagnosis of something does not say anything about the severity of the condition. And that's from Higgs, 880 F. 2nd and 863. Now the ALJ did acknowledge that there was extensive documentation of medical treatment, evidence, and clinical findings after the date last insured. There's no dispute. There's a very long 700-something page record in this case, but all of it falls after the date last insured, as the ALJ acknowledged. This court has often held that evidence of treatment after the date last insured simply does not meet the claimant's burden of proving that they had a severe impairment prior to the date last insured. Some examples would be Key, 109 F. 3rd at 273, Higgs again, and Strong, which is an unpublished opinion in the federal appendix. Now the claimant did discuss just recently in his argument the two doctors' opinions in this case, one from Dr. Larson and one from Dr. Pickering. Dr. Larson was claimant's, I believe he was his primary care physician, but Dr. Larson did not begin to treat claimant until 2003 from what we can tell in the record. That's some two years after his date last insured. Now the ALJ gave Dr. Larson's opinion little weight because it was provided well over 10 years after the alleged onset date and was not supported by diagnostic evidence or clinical findings prior to the date last insured. That's the reason the ALJ gave. Now the only possible reference back to the relevant time period that Dr. Larson's opinion form gave was a typewritten state block in the upper left-hand corner of the first page that said claimant's name and then as of June 1, 2001. Now this court has held in the past that an opinion that was produced long after the date last insured is one reason to support discounting the doctor's opinion, and that's from Waters. We cited that in our brief earlier to this court. So even if we were to assume that this opinion did relate back to the appropriate time period, the ALJ gave sufficient reasons to discount the opinion. He found the doctor's opinion lacked support in the record, which is an appropriate reason to discount an opinion of even a treating source. This court has held that an ALJ can properly reject a treating source opinion where there are no underlying clinical findings supporting the opinion in record. It's from Landslaw. In this case, as I mentioned, the only records during the relevant time period were Dr. Taylor's records in which she found that he had no other issues beyond a history of hypertension. Further undermining Dr. Larson's opinion, he wrote in it specifically that he was basing his opinion on findings of osteoarthritis and diabetic neuropathy, neither of which were conditions that were diagnosed prior to his DLI. Diabetes was diagnosed shortly after the DLI in July 2001, as the claimant points out, but by August 2001, and that's at page ID 336, the doctors found that diabetes was controlled and there were no indications of limitations resulting from that diagnosis, even if the diagnosis had existed. Arthritis did not appear in the records until several years later. I believe it was in 2009 was the first time I saw it in the record. That's at page ID 328. As to the opinion of the psychologist in this case, Dr. Pickering. Dr. Pickering was a one-time examining psychologist, and he did not see claimant until approximately 10 years after his date last insured. His date last insured expired in 2001. Dr. Pickering examined him in 2011. Now, the ALJ does not need to provide the same good reasons to discount a one-time examining source as he does a treating source. However, the ALJ did consider Dr. Pickering's opinion, and he decided to give it little weight and he provided specific reasons for doing so. The ALJ noted that the pre-DLI record did not document any related diagnosis, complaints, or mental health treatment for anxiety or depression, which are the conditions on which Dr. Pickering's opinion is based. As such, Dr. Pickering's opinion similarly lacked support in the record during the relevant period, and the ALJ did not hear in discounting Dr. Pickering's opinion. Thank you. Your Honors, I will take any questions that you have for me. If you have any, I understand. If not, apparently we have your argument in hand, so that's fine. I'm not required to use the entire time. Thank you, Counsel.  Yes, Your Honors. The fact that Judge, the ALJ, didn't find that Frank was disabled before the date last insured isn't enough. There's a case that's directly on point, Sam v. Astru, 550. And that's one. It's just like this. It's a Title II case, and the judge went on to find there that he was never disabled. And Social Security ruling 8320 is pretty specific about this. They say that's important. The date last insured is important to the extent that it regulates whether or not a person can collect benefits, but you still have to determine the onset date. The judge did not determine that he was never disabled. The judge said he was never disabled by the date last insured because there was nothing up until the date last insured. And in cases like that, when you don't have medical records, and you have a good work history that is consistent, and statements from Mr. Seeley that he tried to work later, he even tried to have his wife help him work and things like that, and couldn't do it, those are all consistent with an onset date as of the time that he complained. The judge, it's another thing he didn't do. It's not something that allows the Social Security Administration to sort of abrogate their responsibility to determine in this case. Did he suffer from severe conditions? Well, we don't know. Because he never looked at that evidence after the date last insured of chronic conditions. And the cases are really clear. So it doesn't matter if it's an SSI case or a Title II case. The judge has to make a determination of whether or not that person was disabled. These kind of cases, there's a specific rule for them. Because the case is a little more complicated, it doesn't mean that you don't have to still make those determinations. And I tried my best to do what that Social Security ruling required. I got the longtime treating doctor, Dr. Larson, to offer his opinion. Treating doctors are entitled to great deference. And this court has found that just because a report is later, and I've got the case right here, doesn't mean necessarily, let me find that for you. We have Gamble v. Bowen where the report was done eight years later. Now that one related back to some earlier notes in there. But then we also have Garland. I'm afraid you're out of time there. But I also think we have your argument in hand as well. Thank you, Judge. The case is submitted. Let me call the next case.